## MERCHANTS AND MINERS TRANSPORTATION COMPANY *v.* DIXON.

1. The court erred in that portion of its order which in substance regulates the proportion of space in ships belonging to the defendant company devoted to offerings of lumber for shipment at the ports of Jacksonville and Savannah. Such an order was in effect a regulation of interstate commerce.
2. The court erred further in granting an order enjoining the defendant from receiving and carrying, for other shippers at the port of Savannah, lumber which has not been physically tendered to it at its place or depot maintained for receiving the same, in preference to lumber of the plaintiff actually and physically tendered at such place; because this injunctive order is not in accord with the decision of this court upholding the regulation or practice of booking or of making specific engagements of space in advance of shipment, where public notice is given by the carrier that it will book the freight of all patrons and impartiality of service is observed.

MAY 22, 1914. REHEARING DENIED JUNE 16, 1914.

Injunction. Before Judge Charlton. Chatham superior court. November 1, 1913.

James M. Dixon, doing business as James M. Dixon & Company, brought a petition for temporary and permanent injunction against the plaintiff in error. It alleged: that Dixon is engaged in the business of shipping lumber from Savannah, Georgia, to Baltimore, Maryland, and to Philadelphia, and does a large business with purchasers of lumber residing in said ports; that his predecessors in business, and himself as their successor, had done this business for a period of forty years; that the defendant company for many years has engaged in the business of a common carrier from Savannah to the two ports mentioned, and maintains a fleet of ships, and advertises to run two ships a week from Savannah to Philadelphia, and three ships a week from Savannah to Baltimore, and the

plaintiff and his predecessors have been large shippers of lumber on the boats of the defendant; that until, or about, July, 1910, defendant maintained its schedule between said ports with reasonable regularity, and built up a large and profitable business, and by reason of its running a regular fleet of steamers absorbed substantially all business between these ports, so that other carriers retired from business, and persons trading between the ports were obliged to partonize the defendant; that on or about the date mentioned, defendant, having as much traffic between these ports as it was able and accustomed to carry, extended its line from Savannah, Georgia, to Jacksonville, Florida, so that its boats were advertised, and customarily ran, from the ports of Baltimore and Philadelphia to Savannah, thence to Jacksonville, stopping by way of Savannah on return trips to Baltimore and Philadelphia, and that by this means the defendant undertook to serve the business of the ports of Jacksonville and Savannah with substantially the same fleet of steamers which it had formerly used to serve the port of Savannah. The eighth paragraph of the petition is as follows: "By reason of its undertaking to serve two ports the said defendant is obliged to neglect its duty as a carrier of goods from Savannah, Ga., to the ports of Baltimore and Philadelphia, so that shippers, among whom is the plaintiff, have suffered greatly, because of their inability to have their goods consisting of lumber, cotton, merchandise, and other matter carried. Defendant has no right, as against the plaintiff, to extend its lines without providing equipment therefor, and it is obliged to furnish equipment for carrying on defendant's regularly established business at the port of Savannah before it can goods by attempting to take on other business at other ports which take up other business, and it can not neglect to carry plaintiff's it is unable to handle with the fleet of steamers it maintained at the time of extending its lines and which it maintains at the present time." The petition avers further: that if the defendant had continued to maintain its original line of ships and served only the business between Savannah and Baltimore and Philadelphia, it would be able to carry all of plaintiff's lumber without delay, and without damages or loss to plaintiff or defendant, but by reason of its using its fleet to serve both ports it has been unable to carry, and refuses to carry, plaintiff's lumber, and plaintiff has suffered great loss and damage by reason of the delay. In addition thereto, de-

fendant has been running only one steamship over the Philadelphia line and two over the Baltimore line, so that lumber offered for shipment from Savannah to these northern ports has accumulated, and defendant has not carried plaintiff's lumber with any degree of diligence or dispatch. The tenth paragraph sets out that plaintiff's place of business is in Savannah, Ga., and when he orders for the same he directs either the Seaboard Air-Line Railway or the Atlantic Coast Line Railroad, whichever line his lumber is upon, to carry said lumber to the docks of the defendant. The above-named rail carriers in turn deliver said lumber to the Central of Georgia Railway, which in turn carries said lumber to the docks of the defendant. Said dock is defendant's depot, at which point it receives goods for shipment and issues a bill of lading therefor. Plaintiff is always ready, able, and willing to pay defendant all freight charges which it requires, and defendant damages plaintiff in the particulars mentioned; that is to say, it will not, while having plenty of room, permit plaintiff to unload his lumber on its wharves and place provided by defendant for unloading, when the same is delivered in cars, but refuses to receive it, and compels the Central of Georgia Railway Company to store the cars on its tracks, where demurrage accumulates against the plaintiff at the rate of one dollar per car per day. The defendant discriminates against the plaintiff in that "it will not receive plaintiff's lumber when tendered to it at its wharf; and at the same time it prefers other shippers of lumber against plaintiff, by accepting their lumber before it accepts plaintiff's lumber which has been previously tendered." Thereupon large damage has resulted to plaintiff and his business. The prayer is that defendant be temporarily and permanently enjoined: "(*a*) From carrying any lumber from Jacksonville until it carries plaintiff's lumber tendered to it for shipment, and which it might have carried with the fleet of steamers it maintained prior to the time it extended its line to Jacksonville, it being the intent of this prayer that defendant be enjoined from carrying lumber from the port of Jacksonville, whereby such carriage would exclude the carriage of lumber of plaintiff from Savannah, which defendant could carry except for the carriage of lumber from Jacksonville. (*b*) From receiving lumber from other dealers not tendered it at its place or depot maintained for receiving same, until it receives and carries the lumber of plaintiff tendered at such

place." The defendant filed its demurrer and verified answer setting up: (1) That the petitioner is not entitled to the relief prayed for, or any portion of the said relief. (2) That the superior court of Chatham is without jurisdiction or power to grant the injunction prayed for. (3) That under the facts the petitioner is not entitled to the relief prayed for.

At the hearing the plaintiff amended his petition by this averment: "Defendant further discriminates against plaintiff as follows: It will receive at Jacksonville and carry, and does receive at Jacksonville and carries, lumber in preference to carrying lumber tendered to it by plaintiff for shipment from Savannah." He prays that this discrimination be enjoined.

After hearing the evidence and argument, Judge Charlton decided as follows: "1st. The grounds of the answer to the rule, averring as a matter of law that the case is without the jurisdiction of the court, and that petitioner is not, under the allegations of the petition, entitled to the relief prayed for, or any part thereof, are overruled. 2d. The defendant, its servants, and agents are enjoined and restrained from discriminating against plaintiff and from favoring shippers at Jacksonville by filling its ships at Jacksonville with lumber which occupies space which has been assigned to plaintiff, or to which plaintiff is entitled, due regard being had to the amount of lumber offered by plaintiff and the amount of lumber offered by Jacksonville shippers. It is not the purpose of this order to restrain defendant from taking on lumber at Jacksonville to fill up space which plaintiff may have no lumber to occupy, but it is its purpose to restrain defendant from filling its ships in Jacksonville with lumber to the exclusion of lumber tendered by plaintiff for shipment from Savannah. Nor is it the purpose of this order to inhibit the defendant from giving to shippers at Jacksonville a due proportion of space, taking into consideration the lumber shipments at any given time at Jacksonville and Savannah respectively. But as to the proportionate space which may be set apart under any allotment thus taking into consideration the lumber ready for shipment at the two ports respectively, the defendant is enjoined from permitting lumber at Jacksonville to occupy the space which, but for such occupancy, would be available to shipments tendered by the plaintiff, although prior tenders at Jacksonville may be sufficient to take the entire space for the sail-

ing. 3d. Defendant, its servants, and agents are further enjoined and restrained from receiving and carrying, for other shippers at Savannah, lumber which has not been physically tendered to it at its place or depot maintained for receiving the same, in preference to lumber of plaintiff actually and physically tendered at such place. 4th. The prayer of plaintiff that defendant be enjoined from carrying any lumber from Jacksonville under any conditions until it carries plaintiff's lumber tendered to it for shipment, and which defendant might have carried with the fleet of steamers it maintained prior to the time it extended its line from Jacksonville, is denied."

To the foregoing decision and to the granting of the interlocutory injunction the defendant excepted.

*Adams & Adams,* for plaintiff in error.

*Osborne & Lawrence,* contra.

BECK, J. (After stating the facts.)

1. We are of the opinion that the court should not have granted the injunctive relief given in the second paragraph or division of his order. There is a distinct recognition in the opinion and adjudication of the court that the transportation company had the right to extend its lines to Jacksonville and make that port its southern terminus. And that being true, it had the right to carry from the port of Jacksonville, on its ships making the northern voyage, all articles of commerce and freight which it was prepared to handle and carry, and as a carrier of which it held itself out to the world. As a carrier by water it was not compelled to carry all kinds of freight; but, holding itself out as a carrier of lumber and offering to the public to receive and transport that species of freight, it was bound to receive it at any port from which it proposed to carry it, and it was under as strong a legal obligation to take freight of this character at Jacksonville as it was at Savannah. It was not bound to furnish adequate facilities for the shipment of all the lumber or all the freight of every other particular species that was offered. We are of the opinion, as was the judge below, that the transportation company was under no legal necessity or obligation to take lumber from the port of Savannah at all, had it, after a proper notice to the public, as it had once been a carrier of lumber, withdrawn itself as a carrier of that particular commodity; and it might, it seems, have confined its offerings to take lumber as freight to the

port of Jacksonville. Inasmuch as this carrier by water is not bound to furnish adequate facilities for shipping all the freight tendered, it is a received doctrine that it might withdraw one or more of its ships and reduce its carrying capacity, although at the time of making the reduction it did not have sufficient carrying capacity to take all the freight offered. *Ocean Steamship Co.* v. *Savannah Locomotive Works & Supply Co.*, 131 *Ga.* 831, 836 (63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. R. 265, 15 Ann. Cas. 1044). And it would seem that if the company could reduce its carrying capacity and could altogether refuse to take lumber as freight at Savannah, it might reduce its space devoted to that species of freight, according to the exigencies of commerce between the ports which it was serving. But whether it could do this or not, we do not think that the Georgia court, within whose jurisdiction the port of Savannah happens to be, could undertake to regulate the commerce between the ports of Jacksonville and Savannah, two shipping ports, and some other port in some other State to which the articles of commerce sent from Jacksonville and Savannah are to be delivered. We observe that it is cogently argued in the brief of counsel for defendant in error that the order under discussion does not attempt to regulate commerce by directing the apportionment of space, admitting that "if this was true the order would pro tanto be error." It is insisted that the court did not regulate nor attempt to regulate, but merely enjoined the defendant from discriminating as to regulations which it had already made. We fail to find the basis for the distinction which is sought here to be made. While such a distinction might possibly be drawn from the words of the court's order, the order is in substance and effect a regulation of commerce between ports being in different States. It can not be said in defense of the order that it only incidentally affects commerce between such ports. One of the plain purposes of that paragraph of the order under consideration is to require of the defendant company "a due proportion of space" to the shippers of lumber at Savannah, "taking into consideration the lumber shipments at any given time at Jacksonville and at Savannah respectively;" and, "as to the proportionate space which may be set apart under any allotment thus taking into consideration the lumber ready for shipment at the two ports respectively, the defendant is enjoined from permitting lumber at Jacksonville to occupy space

which, but for such occupancy, would be available to shipments tendered by the plaintiff, although prior tenders at Jacksonville may be sufficient to take the entire space for the sailing." This injunctive order evidently requires at the hands of the defendant company the allotment of a reasonable portion of the space set apart for lumber for the shippers at Savannah. If the court had said in its order that one half or two thirds of the space in each sailing available for lumber should be reserved for the Savannah shippers of lumber, it would seem that this would clearly be an attempted regulation of commerce in the particular commodity under consideration; and the fact that the order requires an allotment of space not measured by an arbitrary standard fixed by the court, but one which is to be determined by the amount of lumber ready to be shipped or offered for shipment at any given time, does not render the order any the less a very substantial regulation. And if it is competent for the Georgia court sitting at Savannah to make such a regulation as this, calling it an injunctive order, it would be competent for a Florida court sitting at Jacksonville to pass a similar order; and then, in case of complaints by Savannah shippers and Jacksonville shippers of lumber, with reference to the same sailings, that they had not been respectively allotted a reasonable or a proper proportion of the space, we would have the peculiar case of a single issue pending before tribunals of different jurisdictions where the findings might be opposite and conflicting, and this carrier might be punished for a contempt of court in Georgia because it had allotted too much space to the Jacksonville shippers, and in Florida because it had allotted too little, even though it had acted in good faith in applying the rule of reason in the matter of allotment.

2. That portion of the court's order embraced in paragraph three thereof, which is set out in the statement of facts, is not in accordance with the decision of this court in the case of *Ocean Steamship Co.* v. *Locomotive Works & Supply Co.,* supra, wherein it is held that the practice of making "specific engagements in advance of the shipment, if the privilege is indifferently extended to all, is but another form of acceptance of goods tendered in the order of their application. The same impartiality of service is rendered when public notice is given by the carrier that he will book the freight of all patrons, and reserve space for the goods

engaged to be transported, as if he had received the goods of the shipper in the order of their tender." While the presiding judge in his opinion discussed to some extent the evidence on this subject, there was no specific act of discrimination declared or enjoined; but the order as passed practically prevented the practice of booking, though it might be entered into in good faith and without discrimination.

What we have said above disposes of the case on its merits, and requires a reversal of the judgment giving the injunctive relief granted by the court's order, and renders it unnecessary to discuss in detail and specifically other questions raised in the record.

*Judgment reversed. All the Justices concur.*